LEWIS SHIRLEY, appellant, *v.* JAMES SPENCER, appellee.

*Appeal from Winnebago.*

Payment of the consideration money and possession of land under a parol con-
tract, is sufficient to take a case out of the Statute of Frauds.

It is the province of the Court to enforce a contract which the parties have
made—not to make a contract for them, and then enforce it.

A. being about to enter land, called on B. for a specified sum of money due him.
B. was unable to pay the debt, and told A. to hire the money on the best
terms he could for him, and that he would pay him whatever he had to pay.
The money was procured at an exorbitant rate for three years, &c., and the
land was entered in the name of the person who loaned the money. B. was
informed of the arrangement and approved of it, but neglected to do as he
had agreed in regard to payment. A. was accordingly obliged to pay it to
save the land: *Held,* that A. was entitled to receive of B. the amount paid
by him to the lender, as he acted as B's agent only.

BILL IN CHANCERY, &c., filed in the Winnebago Circuit
Court by the appellee against the appellant, and heard be-
fore the Hon. Jesse B. Thomas, at the May term 1847.

The material facts will be found in the arguments of coun-
sel, and in the Opinion of the Court.

*A. T. Bledsoe* argued orally for the appellant, and sub-
mitted the following written argument of *E. Peck & J. A.
McDougall:*

The case contained in the abstract may be now briefly
stated thus:

In 1836, Shirley had claimed a half section in Winnebago
county. He employed Spencer to go on to it and keep it,
promising Spencer therefor, eighty acres or a hundred dollars,
and the value of his improvements, who had the election as
to modes of payment being in dispute. Spencer went on
and kept the half section as he had agreed, and until the land
sale. The premises to constitute the eighty of Spencer, were
agreed on, except that the 17 acre tract was only ascertained
by quantity and contiguity. There is no dispute but that
Spencer performed by keeping the claim. Execution of this
agreement by Shirley is asked by the bill. It appears how-

ever, that previous to the land sale, Spencer owed Shirley seventy dollars. It required a hundred dollars to enter Spencer's eighty acres. Shirley called on Spencer for the seventy dollars to aid in making his payment into the Land Office. Spencer appears to have suggested that he preferred the hundred dollars and the value of his improvements, but did agree that Shirley should go to Galena and enter the eighty acres for him, and as he was in default to Shirley the seventy dollars, he further agreed that Shirley should borrow the seventy dollars to replace his upon the same terms that Shirley should borrow for himself. Shirley went to Galena, borrowed the money for himself and Spencer, of one Taylor, for three years at thirty three and a third per cent. per annum, and ten per cent. per annum thereafter, (these were about the rates, at the time and place.) After Shirley's return, Spencer acquiesced in the arrangement, although he thought the interest high, saying he believed Shirley had done as well as he could. Afterwards Spencer refused to pay more than twelve per cent. per annum, and out of this question all the difficulty between the parties has grown.

It appears to have been understood that this indebtedness of Spencer was to be paid Shirley before Shirley conveyed. The question really in dispute was as to the amount to be paid.

The respondent's answer is not a very skilful piece of pleading, but it is supposed that this is more the fault of counsel than client. The main and substantial facts are, however, sufficiently averred and are sufficiently clear, if once separated from the rubbish.

The bill sets out a location by agreement of the timber lot which is nothing more than an agreement between the parties by proof. And the arbitration pleaded in the bill amounts to nothing. There is no proof of an agreement to submit on the part of respondent. Their proceedings appear to have lacked the regularity to give them force under any circumstance, and it does not appear that either party acquiesced in the finding. Respondent has most emphatically dissented. Then there is no proof that Spencer ever performed his part

precedent to the conveyance to him under the arbitration. For a dozen reasons manifest, it is presumed that the finding of arbitrators was not regarded by the Court below, in rendering decree, and cannot be considered as of weight by this Court. But suppose the arbitration and award to have been regular and acquiesced in, yet Spencer has not complied with the conditions of the award; he did not tender the money and security, as directed by the award.

The questions, then, that suggest themselves as to the case presented, are:

*First.* Is the agreement averred and proved, such an one as resting in mere parol, is not reached by the Statute of Frauds?

*Second.* If the Statute of Frauds would reach the agreement, is it avoided by the possession of Spencer?

*Third.* If the parol agreement is binding, was the complainant, at time of filing his bill, entitled to a conveyance?

*Fourth.* Is the agreement proved sufficiently certain to authorize a decree of specific performance?

*First point.* It is clear that any parol agreement to convey lands held *in presenti,* is void. It is equally clear, that a similar agreement to convey lands to be acquired *in futuro* is void. That there was a consideration is nothing; for the full payment of purchase money does not release from the statute, and services are nothing more than money.

This is not to be confounded with those cases of implied trusts, the boundaries of which are well defined and jealously guarded. If A. entrusts B. with money, and B. converts the money into lands, the land is A's, and the law will imply a trust. If A. acquire a title in fraud of B., for the purpose of relieving against the fraud, the law will imply a trust. But, except in cases where the property of the *cestui que trust* is traced into the estate in question, and except in cases of fraud, the law implies no trusts, and trusts must be declared in writing, as agreements to sell or convey must be reduced to writing.

This agreement is a simple undertaking to convey land or money as a compensation for services, the agreement on

both sides being executory.    It is not perceived that it pos-
sesses any features as an agreement, that would relieve it
from the Statute of Frauds.    For the purposes of the pres-
ent, case, whether or not Shirley had the choice of the
mode of compensation is not considered material, although
it might well be said, that as complainant had an adequate
remedy at Law, if there was a failure on the part of respond-
ent, he should have been left to that, rather than be allowed
at least a novel, if not a doubtful claim in Equity. ,

· *Second point.*    The Statute of Frauds does not, in terms,
admit of any exception to the rule, that "no action shall be
brought whereby to charge any person upon any contract,
for the sale of lands, tenements or hereditaments, or any
interest in or concerning them, unless the promise or agree-
ment upon which such action is brought, or some memoran-
dum or note thereof shall be in writing, and signed by the
party to be charged therewith."

, Our statute is the same in substance, with the        Eliz.
and was made to remedy the same evil.    The policy of the
law is, to prevent estates being defeated by mere parol testi-
mony, which may be false, landed estates being specially
guarded by the English law; also to remove the great temp-
tations to perjury that would exist, could an estate in lands
be defeated by parol testimony.

It has been with a view to this policy, as well as to the
language of the statute, that Courts have held that this note
or memorandum in writing, must be sufficiently certain to
show clearly what particular land is to be conveyed under
the agreement.    If the memorandum should show an entire
contract for a given number of acres, part defined and part
undefined, then, as an entire contract must be good in *toto,*
or void in *toto,* and as there would be a part here unlocated
and undefined, upon which the Statute of Frauds must ope-
rate, it must be made to operate upon the whole agreement,
leaving the party to his Common Law remedy for the con-
sideration.    If we assume that all the agreement alleged or
proved had been reduced to writing, could a specific per-
formance be enforced?

It is an entire agreement for eighty acres of land, (saying

nothing of the alternative,) for a consideration which is substantially in gross, and cannot be severed. The consideration has been paid; the Court is asked to compel a conveyance. The agreement ascertains sixty three acres; seventeen acres of the eighty is altogether undetermined; it is to be located in a certain neighborhood, and out of a certain large tract; but this is just as indefinite for all practical purposes, as if it was to be located anywhere in the county. The particular land to be conveyed is not ascertained by the bargainor, and the policy of the law is to prevent Courts as well as witnesses, by parol, to ascertain this for him; and it is here assumed and insisted upon as law, that a Court of Equity cannot enforce the specific performance of any contract for the conveyance of land where, by the terms of the agreement, the bargainor has not ascertained the precise premises upon which the decree of the Court is to operate.

If this position be true, the Court below erred in decreeing an arbitrary location of seventeen acres of Shirley's land by a commissioner, who receives neither starting point, course, distance, monument or boundary, either in the agreement of the parties, or indeed, in the decree of the Court.

The Common Law left the parties to their damages for breach of contract. Equity has interposed, and has been clothed with the power to compel a specific performance, but the Court of Equity cannot do more or other than this; it cannot make a new agreement, it cannot modify or change; neither can it ascertain as part and parcel of an agreement, a matter left open and undetermined by contracting parties, and into which conclusion of the Court of Equity, the contract of the contracting parties never entered; as in this case, the commissioner locates seventeen acres; the Court compels its conveyance. It will not be contended, that Shirley ever agreed to convey these seventeen acres, or that the Court, in making the decree, is compelling a specific performance of Shirley's contract.

In order to maintain the position involved in this portion of the decree, it is necessary to maintain the position, that a Court of Equity has the power to compel a performance of

an agreement, not only in specie, but in kind; that upon an agreement to convey eighty acres of land, the Court may enforce the conveyance of any eighty acres of land. The law unquestionably is, that in exercising the power to compel a specific performance, the Court must confine itself to the terms of the agreement; that the extent of the power is limited by the terms of the agreement. The Court cannot make a new contract for the parties; that under this power of the Court of Chancery, no man can be compelled to surrender any specific thing, which specific and identical thing he has not agreed to part with by the terms of the agreement to be enforced. *Colson* v. *Thompson*, 2 Wheaton, 341, 342.

The decree is, then, erroneous in attempting to enforce the agreement so far as seventeen acres are concerned, and if so, it is entirely erroneous. If the agreement itself could be made several, if it had been a sale by the acre, and a price for each acre, or a sale by lots, and a price for each lot, then it would have been possible and competent for the Court to have treated the several portions of the contract severally. But such is not the case; the agreement is inseverable. Suppose the Court to decree a conveyance of the sixty three acres, will it give damages for the seventeen acres in lieu thereof? The damages must be the consideration of the seventeen acres; but this consideration was a gross consideration for the eighty acres; the consideration of the seventeen acres must be severed. The question must be, how much of the labor and services rendered, was rendered on account of the seventeen acres, and the value thereof, a fact which cannot be ascertained; for the subject matter, the consideration or services, do not, in their nature, admit of this kind of severance, as no particular amount of services are rendered for these seventeen acres.

If, then, the agreement be entire, and an entire performance cannot be enforced, then no performance can be enforced; for the performance exacted must be either of an entire agreement, or some several and entire portion thereof.

It would not follow from this position of appellant, that

the agreement was necessarily void or within the Statute of Frauds. The agreement was here treated as one in writing, a specific performance of which, from its uncertain character, could not be enforced in Equity, but upon which the aggrieved party might have a full and adequate remedy at Law. *Lindsay* v. *Lynch,* 2 Schoales & Lefroy, 7; *Phillips* v. *Thompson,* 1 Johns. Ch. R. 149; *Boardman* v. *Moysten,* 6 Vesey, 467; 2 Story's Eq. Jur. 764–67.

To recur, then, to the Statute of Frauds. It is, of course, admitted that possession and part performance may take a case out of the statute. This possession is understood to stand in place of and answer for, the deliberate and certain act of the bargainor, manifested in and by his memorandum in writing. He must be placed in possession by the bargainor under the agreement. The possession must be co-extensive with the agreement and not greater or less, for it is the placing in possession, and the actual possession that is the evidence, which the law respects, of the extent of premises with which the bargainor undertook to part. It may be said that a bargainor, by accepting the price and putting a party in possession of certain definite premises, has concluded himself.

In this case, Spencer, did not go into possession of any part of the premises in dispute under the agreement sought to be enforced. When he located on the half section, his location or the location of the interest he was to acquire, was undetermined. He took possession for and in behalf of Shirley, of the three hundred and twenty acres as his agent; he appears to have enclosed and improved a small tract, but with this exception, from all that appears in bill, answer or proofs, his possession has continued the same down to this day. Various subsequent understandings have been had as to in what part of the half section his interests were to be located; but that any new act of possession or of putting into possession, have either accompanied or followed such uderstandings, does not appear. *Cole* v. *White,* 1 Bro. Ch. R. 409; *Wills* v. *Stradling,* 3 Vesey, 378; *Frame* v. *Dawson,* 14 do. 386; Sugden on Vendors, ch. 3, § 3; 2 Story Eq. Jur. § 763.

It cannot strictly be said that Spencer was ever in pos-

session of more than the improved tract. The case does not show that he was. He "held" the three hundred and twenty for Shirley. It could hardly be said that this was possession. The wood land was measured, but it was wild wood land still; and indeed without a man's possessions are what one claims, there is no reason to suppose Spencer was ever possessed of more than a small portion of the eighty acres.

Then when placed in possession, he was placed in possession as the agent of and for the benefit of Shirley. At that time, he was not placed in possession of any part of premises as his under the agreement. He has maintained the same possession ever since. There has been no new act of placing in possession by Shirley. Nothing has transpired that can stand in lieu of the written agreement of Shirley defining the nature and extent of his agreement, except the testimony of witnesses speaking of a parol agreement resting in their memories. And this testimony shows that Shirley claimed the option of paying in money for the services rendered by Spencer.

If it is insisted that the possession in this case can aid the agreement, what possession is it, and when acquired, and what are its boundaries? If it is the possession of the half section, he must show an agreement for the half section, and that he went into possession under it. If the possession of the eighty, he must show that he was placed in possession of eighty acres under an agreement; for eighty acres and the possession must be co-extensive with the agreement; but this is not pretended, as it is admitted that parcel of the eighty is yet unascertained.

There is then, no such placing in possession under agreement, and there is no such possession as will take the agreement in question, out of the operation of the Statute of Frauds.

*Third point.* Admitting that the agreement is a binding one upon respondent, the question next arises, has he placed himself in a position to claim relief, and if so, is he entitled to the relief decreed?

He who asks equity must have done equity, or he must

offer to do it. If he has not done all, or proffered to do all, or if he has refused to do all that entitles him to an equitable claim, he has no right in equity to assert the claim. 2 Wheaton, 342.

The agreement between Spencer and Shirley was not completed at any one time; it was an understanding from time to time, resting in parol between the parties, each confiding in the other. At the time Shirley procured Taylor to enter the land, it was clearly the understanding, that Spencer should have the eighty acres. The money for the entry was to be furnished by Shirley, but seventy dollars of the money he designed for the purpose, was in the hands of complainant. He authorized Shirley to negotiate on his account a loan of that amount, and charge it upon the lands. Shirley did so and Spencer approved. (The testimony upon this point is not in conflict with any other.) Taylor took the title in trust to convey to Shirley on payment of money borrowed. Shirley alone was named in the papers, but seventy dollars of the debt secured and interest was the debt of Spencer, and Spencer was bound to pay it. Such is the agreement and understanding proved by the testimony. This made the trust in equity just the same as if Taylor had declared a trust upon eighty acres in favor of Spencer, upon Spencer's paying seventy dollars and the interest, and upon the remainder of premises in favor of Shirley, in case Shirley paid the balance. Suppose such to have been the case; suppose further, the entire premises conveyed by Taylor to Shirley; Shirley would have received the Spencer eighty subject to the trust declared, and certainly would have been under no obligation to convey to Spencer, until Spencer had fully paid.

The same is true in the present case, for the fact that no trust was declared in favor of Spencer, places him in no better situation than if such had been the case. At the time Shirley settled with Ferguson who represented Taylor, Spencer had not made good any part of his proportion of the borrowed money. Shirley had to pay it all, and had to pay on Spencer's account, (or get Spencer's land discharged from Spencer's debt,) about two hundred dollars. Shirley

paid it, took the deed, and stood substituted to Taylor's rights as to the money borrowed for Spencer. This amount Spencer has always refused to pay, and without paying it he has no right to the land.

His bill and his proof should have shown that he was ready and willing to have accounted for the principal and interest of his debt, whereas the whole controversy has been about, and the cause of the controversy was, that Spencer refused. And certainly the defendant was right. Nothing could be more inequitable than to charge upon Shirley the usance upon monies first lent to Spencer, and then borrowed by Shirley on Spencer's account at Spencer's request, to replace the money Spencer had borrowed, and where Spencer had approved the loan after it was made. Yet such is the effect of the decree in this case.

It is, and will be insisted by the respondent, that after he settled with Ferguson and notified Spencer, and Spencer absolutely refused to pay his part according to the understanding with which respondent made his arrangements with Taylor, that respondent had the right to remit Spencer to his claim of a hundred dollars and value of improvements; and that Spencer so refusing, Shirley properly exercised such right in selling a part of the eighty to Henderson, and that Spencer having refused to entitle himself to the land, and Shirley having in consequence thereof, parted with a part of it. Spencer must now seek his remedy for services, at Common Law, either under the alternative provision of the agent, or otherwise.

*W. I. Ferguson* argued orally, and submitted the following written argument of *W. T. Burgess,* for the appellee:

The errors that have been assigned in this case are:

1. The Court erred in refusing to dissolve the injunction on motion of defendants below;

2. The Court below erred in striking demurrer of defendant below to the bill in this cause from the files, and in refusing to entertain said demurrer;

3. The Court below erred in rendering the final decree in this cause;

4. The Court below erred in rendering any final decree for complainant below; and

5. The Court below erred in granting the particular final decree exhibited in the record of this cause.

The first assignment, if such an assignment can be made, calls for a construction of the statute on injunctions, and the practice of the Courts in granting them.

I have not been able to find in any work on Chancery Practice in England, that a bond was required previous to the granting of an injunction. It issued upon proper case being made, supported by affidavit, and generally on an *ex parte* motion. Our statute is, therefore, an innovation upon the rules of Chancery proceeding in this point. 1 Madd. 174, *et seq.;* 2 do. 267, *et seq.*

The Revised Statutes, 382, § 11, prescribe the mode of granting injunctions on judgments at law. The first clause is, that no injunction shall be granted to stay any judgment at law, for a greater sum than the complainant shows himself equitably not bound to pay, and costs; and injunction, when granted, operates as a release of errors. The next clause requires a bond to be given with security to the defendant, approved by the officer granting it, and filed with the clerk, in double the sum directed to be enjoined and conditioned for the payment of all money and costs due, and to become due to the complainant in the action at law, and such costs and damages as shall be awarded in case the injunction is dissolved. And the next clause goes on to prescribe what those damages shall be—not more than ten per cent. upon the part released from the injunction, exclusive of legal interest and costs—for which the clerk shall issue execution.

Now, how can the provisions of this statute be twisted round to apply to all cases where an injunction is to be granted. A bond with a certain condition and penalty, that penalty and condition having exclusive reference to a judgment at law, is, by the statute, required upon enjoining a judgment at law, and very properly. There is a strong presumption that the proceedings have been correct and right, and when a party has gone so far as to recover a sum of

money, and it is only necessary for him to have satisfaction thereof, he should not be stayed without having additional security. But can a statute making express provisions for one case of a class of cases, and not extending to other cases of the same class, be extended to all and every kind of cases? This statute does not make provision for actions pending, and not in judgment. It has express application throughout to judgments at law, and without interpolating, it cannot be applied to anything else.

I shall not argue the other point made in the motion, that the equity of the bill does not authorize an injunction.

I have argued this assignment, on the assumption that the record is in such a shape that this error can be assigned, but the record does not show it. This was a motion to dissolve, and the motion itself, and the decision of the Court upon it, should have been preserved by bill of exceptions.

The second assignment questions the propriety of striking the demurrer from the files for frivolousness. The same objection lies here, that the motion and its disposition is not preserved by bill of exceptions.

The last three assignments may be met and considered together.

The bill of complainant in this cause was filed February 13th, 1846, and the facts as stated in the bill, and admitted by the answer filed June 5th, 1846, are shortly these: That in 1836, the complainant resided in Indiana. At the solicitation of defendant he removed to this State. It was agreed between them before he came, that if Spencer would keep for Shirley a claim of a half section of land until public land sales, Shirley would deed and convey to him eighty acres of it, including such improvements as Spencer might make, and one eighth of the timber land on the half section, or pay him one hundred dollars and the value of such improvements. The option in the bill being claimed by Spencer, and in the answer by Shirley. That Spencer came in 1836, and was in the winter of 1836–7 put in possession by Shirley, of the east half of section twenty five, township forty three, range two, in Winnebago county; that

there was a log house on it, for which Spencer paid Shirley twenty two dollars and fifty cents. Spencer kept possession of said land until the land sales in October, 1839, and made valuable improvements on it, and has continued in possession of it up to the time of the filing of the bill; that the eighty acres to be held and deeded to Spencer under the agreement, had been settled upon part before, and part after the land sale; but seventeen acres are not bounded, but ascertained by quantity and contiguity; that Shirley was unable to enter the land himself, not having the money, and was obliged to procure one Taylor to enter it on a share for him.

From the answer it appears, that previous to the land sale, Spencer was indebted to the said Shirley to the amount of seventy dollars.

Now, Shirley claims that Spencer agreed with him to pay interest upon this seventy dollars, at the same rate that he was paying Taylor; that this should be paid before the land was conveyed by him to Spencer. This agreement Spencer denies, expressing his willingness, however, to pay the debt and twelve per cent. interest. This seems to have been the dispute out of which this litigation has grown.

Now, as to the points made by counsel for plaintiff in error: "Is the agreement averred and proved such an one as resting in mere parol, is not reached by the Statute of Frauds?" and does the possession of Spencer take the case out?

All agreements for the conveyance of land resting in parol, not evidenced by writing signed by the parties, are within the Statute of Frauds, unless the parties by their own acts under the agreement, have placed themselves in a situation, that to apply the Statute of Frauds, would be enabling one party to commit a fraud on the other, and thereby have taken the case out of the Statute.

The question in such cases is not, as the counsel in arguing under these points seek to make it, whether resulting or implied trusts exist, but did the parties make an agreement, and if the agreement is not in writing, have the parties

or either of them, done such acts under that agreement, as to make it inequitable to apply the statute, and refuse a specific performance of the agreement.

In this case, bill and answer admit the agreement, and admit its performance on the part of Spencer, up to the land sale, and only raise a question by the answer that a debt should be paid before conveyance, yet, admitting facts which clearly, under all the decisions, take the case out of the statute. Now, the party cannot claim the benefit of the statute in his answer, if the facts which take the case out of the statute are not denied. This, then, disposes of the first two points made by plaintiff in error. 2 Mad. Ch. R. 487.

As to the other point, Shirley contends, that at the time of the land sale, another condition was engrafted on the agreement: That the seventy dollars and thirty three and one third per cent. interest should be paid by Spencer. This is denied by Spencer, averring his willingness to pay the debt and twelve per cent. interest.

Here, then, it becomes necessary to look at the proofs, and we contend that they are not before the Court; that they form no part of the record in this cause, any more than the affidavit requiring security for costs does, that follows them. And, that if the counsel intended to rely upon them, they should have been referred to in some way, in the record itself. There is nothing in the record itself to identify and show that these are the particular depositions and proofs, and all the depositions and proofs that were taken in the cause, and submitted to the Court at the hearing. 3 Scam. 257.

The debt referred to was evidenced by a note. Was that note produced? Should it not have been? Does the record show whether it was or not? If the note was produced, it may have denied the whole case sought to be made out by Shirley.

But, reserving this point, let us see if. the proofs as they are, make out that the condition as contended for by Shirley was engrafted on the agreement.

The only witness who testifies to this point is Norton; he

says, that he heard it admitted by Spencer, that the seven-ty dollars was to be paid before Spencer got a title from Shirley. But in the same examination he says, and in re-ply to the questions of Shirley, that Spencer never men-tioned any rate of interest in connection with these seventy dollars, and it is material here to ask, was this admission made before or after the award? If made after, it was just such an admission as, under the circumstances, Spencer should make, and yet not make it any part of the original agreement; and the time when this admission was made does not appear in the testimony.

Again, Spencer never denied this indebtedness—was al-ways willing to pay it; but under the circumstances, would he have been justified in paying Shirley seventy dollars, whilst this matter was in dispute, and before Shirley got a deed? For it will be seen by the answer, that Shirley did not get his title until about six weeks before suit brought. If Shirley never procured a title, Spencer then must have sued him for the one hundred dollars and interest; and why pay a man a debt when he is indebted to you? Spencer says: "True, I am owing Shirley seventy dollars, and I will pay him, when he gives me a deed of my place." Norton hears this, and could he not come in and swear, just as he has done, that he understood that there seventy dollars were to be paid before Spencer got a deed? But still, this does not prove the precise agreement set up by Shirley. The Court has gone thus far in making up their decree, and we contend that Shirley has been allowed by the Court below, all that the proof warrants him in asking. He has been al-lowed seventy dollars and twelve per cent. interest.

Here, however, we will probably be referred by the coun-sel to the conversations between Norton and Spencer, just before and after land sales. We contend that these conver-sations prove too much for their purpose. The entire eighty on which Spencer lived, that is, the west half of the quarter section, never was selected and set apart to Spencer. And again, Spencer was not indebted to Shirley in an amount necessary to enter an eighty—one hundred dollars; clearly

showing, that admitting the witness to recollect the conver-
sations correctly, yet, Spencer must have had some other
object in view, than that of informing the witness of the ex-
act relations existing between him and Shirley. It will be
recollected, that these were claim times; that a man could
not claim more than a half section; from the proof, Shirley
had another claim, and that if Spencer had stated
truly the relationship existing between him and Shirley,
it would have shown that Shirley was claiming more than
he had a right to. Then, from the evidence, this witness
was none of the claimites; he never attended their meet-
ings, and did not know their regulations; he comes to one
that is such, and makes inquiries about his land, and asks if he
is going to enter. Spencer calls the claim his; that he
has no money to enter it with; that he has made Shirley his
agent to enter for him an eighty; that Shirley has no
money; is going to borrow; and that he told him to do as
well by him as he did by himself; all the way misstating
his own case, to protect Shirley's rights. After land sales
he repeats this story, but the counsel ask, why afterwards?
The answer says: Shirley entered only the quarter; there
was, then, another quarter to be protected under the claim
law. And now, Shirley seeks to take advantage to Spen-
cer's wrong and prejudice, and in violation of every princi-
ple of honor and fair dealing, of Spencer's statements made
to protect Shirley's rights.

Again, this is not the agreement set up by Shirley, but he
seeks to infer from it that such was the agreement. But
such an inference is in conflict with all the other direct
proof in the case. That conversation may have occurred
just as related, and yet, the fact sought to be deduced from
it, not true.

Powell, the other witness, proves nothing unless it is that
he was an arbitrator, and made the award set out in the bill,
and that this matter was contested before him, one party
claiming, and the other denying the very point in contro-
versy.

There is no proof that Shirley has paid Taylor anything.

It may be inferred that he has done so, from his having got a deed, but that is not proof.   Again, the legitimate proof of the bond made by him to Taylor, for the purchase of these lands, is the bond itself.   That is not produced, nor its absence accounted for.   It is the best proof, and it is incumbent on Shirley to produce it, so that, in fact, from the record, there was no proof before the Court below on the points, that Shirley did take a bond from Taylor, only as far as stated in the bill; that by that bond he was to pay interest on the purchase money, at the rate of thirty three and one third per cent., and that he did actually pay it.

The plaintiff in error relies upon these grounds:

1.  That this contract is within the Statute of Frauds, and yet does not deny facts which have been by this Court decided to take the case out of the Statute, payment of the purchase money, or other consideration, and delivery of possession.   2 Scam. 221.

2.  That he who seeks equity must do equity; gives his version of the agreement; seeks to add to that agreement conditions:  *first*, that Spencer agreed to pay him on the seventy dollars, the same interest that he should pay Taylor; and *second*, that until he did so he was not to have a deed.

Now, the burthen of proving these is on him, and he must prove them clearly and satisfactorily.   Can the first be proved by inference from admissions stating something entirely different, that Spencer had constituted Shirley his agent to enter land, nearly one half of which is not in the controversy, and to which Spencer as against Shirley, and under the agreement, never made any claim whatever?   And can the other, from the mere fact of an acknowledgment of indebtedness, and expressing a willingness to pay it when he got a deed?   But admit it.   Shirley sold to Henderson, on the ninth of December, 1845, and before he got a deed from Ferguson, land claimed by Spencer, and clearly proved, to the amount of two hundred and twenty dollars, and received the money.   Shirley paid Taylor five hundred and twenty dollars and ninety one cents; seven twentieths of this is but about one hundred and sixty dollars, so that Shirley

had already, at and before the commencement of this suit, received more than he was entitled to under his own version of the agreement.   Now, what becomes of the argument of doing equity?

It was entirely unnecessary to tender any money to Shirley, under these circumstances, before instituting suit.   And Shirley expressly states in his answer, that he refused, and always had refused to make a deed to Spencer.

The Opinion of the Court was delivered by

CATON, J.* This cause was submitted to the Court principally upon written arguments, and we acknowledge the assistance which they have afforded in enabling us to come to a satisfactory conclusion; and where the cause has been so ably discussed by counsel, but little need be said by the Court more than to state conclusions.

As there is very little disagreement as to the substantial facts of the case, it is unnecessary to set out a full abstract here, which would necessarily be very voluminous, but the facts will be referred to as occasion may require. This agreement, which is sought to be specifically enforced resting in parol, is within the Statute of Frauds. And the first question is, whether such acts have been done under it as will relieve it in equity from the operation of that statute. Spencer took possession of the whole half section of land under the agreement.   At this time, however, the eighty acres which Spencer was to have, were not designated. Afterwards and at different times, all but seventeen acres of the land was designated, Spencer still being in possession. From that time, we think that Spencer was in possession of this specific land under the contract, upon which he had made valuable and lasting improvements.   It is admitted on all hands, that Spencer had paid the entire consideration for the eighty acres, by the services which he had rendered Shirley according to the agreement.   The law is well set-

---

*WILSON, C. J. did not sit in this case.

tled, that this is sufficient to take the case out of the Statute of Frauds, unless the uncertainty as to the location of the seventeen acres will prevent it.

We have sought in vain through this record, to find any evidence by which we can locate these seventeen acres. The evidence does not show that the parties ever did complete that portion of the agreement, by designating them. Such is the finding of the Court below, as is recited in the decree, and in consequence of this, the Court appointed a third person to go and complete this unfinished agreement of the parties for them, by ascertaining and settling the bounds of the said seventeen acres. We are of opinion that that portion of the decree, at least, was erroneous. It is the province of the Court to enforce the contract which the parties have made, and not to make a contract for them, and then enforce it. This portion of the land not having been selected by the parties, the Court ought not to have appointed a Commissioner to select it for them. When the Court compels the conveyance of these seventeen acres, how can it say that they are the seventeen acres which the party agreed to convey?

It is insisted that, inasmuch as this is an entire contract, and that because a part of it is so uncertain that it cannot be enforced, that, therefore, the Court will enforce no part of it, but will leave the party to his remedy at law. But this, we think, is carrying the doctrine too far. When a man has bargained and paid for eighty acres of land, and we can only locate sixty three of it, to say that because we cannot give him all which he contracted for, we will therefore turn him out of Court with none, would seem to wear the appearance of a hardship. If he choose to take what he can locate and make certain, we think he may do so without violating any principle, and without giving the defendant below any just cause to complain.

About the time Shirley was going to enter the land, he called on Spencer to pay him seventy dollars, which he owed him, he not having the means to enter the land himself. Spencer could not pay him, but told him to hire the money

on the best terms that he could for him, and he would pay him whatever he had to pay. This, we think, is a fair conclusion, taking all of the evidence together. In pursuance of this instruction, Shirley procured the money of one Taylor at an interest of thirty three and a third per cent. for three years, and in case the money was not paid by that time, then interest was to be paid on the whole at the rate of ten per cent. The land was entered in Taylor's name for security. Spencer was informed of this arrangement afterwards, and approved it. He never, however, paid the money thus loaned, and Shirley was obliged to pay it for him in order to get a title to the land, which he did in 1845. This matter is adjudicated upon in the Court below, and perhaps properly; but in the decree, the Court, instead of allowing the interest which Shirley paid on the seventy dollars for Spencer, only allowed him interest at the rate of twelve twelve per cent. This was wrong. Shirley either had a right to recover what he had paid to Taylor, or he had only a right to recover interest at six per cent. It was only by virtue of a special agreement, that he was bound to pay more than six per cent., and there was no agreement that he should pay twelve per cent. It is true that he once stated, that he was willing to pay twelve per cent., but this was never agreed to by Shirley, who all the time insisted he had a right to all that he paid Taylor's estate for Spencer. And we think he was right in this claim. He was not obnoxious to the charge of claiming usury on his own account, but was claiming to be re-imbursed what he had contracted for with Taylor, and paid as the agent of Spencer, and according to his directions.

After the timber land had been set off to Spencer, Shirley sold eighteen and six-eighteenth acres to Henderson for two hundred and twenty three dollars and eighty cents, as is found by the Court below, which is probably about correct. In equity, this money was received by Shirley to the use of Spencer, as he has chosen to affirm the sale. From this amount must be deducted one hundred and eighty two dollars, the amount as near as we can ascertain, which Shirley paid to the estate of Taylor for the use of Spencer, which

Shirley *v.* Spencer.

leaves only forty one dollars and twenty cents, which the complainant is entitled to recover of Shirley.

That portion of the decree which directs Shirley to convey the said seventeen acres, and appointing a Commissioner to ascertain the same, must be reversed, as also that portion of the decree which awards Shirley to pay to Spencer more than forty one dollars and twenty cents, and the balance of said decree must be affirmed, and the Circuit Court must be directed to issue an execution for the said forty one dollars and twenty cents and costs, and that each party pay one half of the costs of this appeal.

*Decree modified.*